## Centre County v. Keeler, Sheriff

*John G. Love,* for petitioner.
*James C. Furst,* contra.

FLEMING, P. J., July 20, 1936.—This is a proceeding for a declaratory judgment. Plaintiff, the County of Centre, and defendant, Sheriff Keeler, concede and agree that all the jurisdictional facts and conditions for a declaratory judgment exist in this case and join in asking the court so to consider it.

It is conceded by all parties in interest that the determination of the questions raised depends upon the interpretation of the two Acts of March 17, 1933, P. L. 14, and June 1, 1933, P. L. 1141.

The first question raised is whether or not the sheriff of Centre County, which is a county of the seventh class, is entitled to collect and retain to himself and for his own use the mileage prescribed by the various fee bills, or whether said mileage shall be paid into the county treasury and become the property of Centre County.

This question has been decided in Bradford County, a county of the seventh class, in an able opinion filed by the Hon. Charles M. Culver in the matter of Benson, Sheriff,

v. County of Bradford, at no. 8, May term 1936, Court of Common Pleas of Bradford County. The matter is now in the appellate court upon appeal from Judge Culver's decision that the mileage should be paid into the county treasury and was the property of the county. The question is therefore a moot one, and further consideration by this court at this time would be improper and superfluous. It follows that if Judge Culver's opinion is affirmed, all mileage will belong to the county and the sheriff will be entitled to receive only the actual expenses of transportation incurred in and about the discharge of his official duties. On the other hand, if the opinion of Judge Culver is reversed, the sheriff will retain the mileage at the rate of 10 cents per mile in lieu of all expenses of transportation. Final determination of such question must, of necessity, await the disposition of the appellate court.

The next question raised is as to the authority of the sheriff to employ a matron for the jail and to fix the salary which shall be paid her. It is admitted that the sheriff has designated his wife as such matron, fixed her salary at $50 per month, and at the date of the filing of the petition in this case, had retained for the payment of such salary the sum of $100 from moneys received or collected by him.

By the terms of the Act of March 17, 1933, P. L. 14, sec. 2, the sheriff is without authority in himself to employ a matron or to fix her compensation. The words of the enactment are plain and are capable of but one construction. The section reads:

"The sheriff is authorized to appoint one or more deputies as may be deemed necessary for the performance of the duties of his office. The number of deputies and their salaries, payable by the county, shall be fixed by a salary board composed of the county commissioners and the sheriff."

It is, therefore, plain that the only individual right of the sheriff is to designate the person or persons to hold the office or offices of deputy, if and when such positions

are established by the salary board, or, in the event that he is aggrieved at the action of the salary board either as to the number of deputies authorized or as to the salaries which have been assigned to such offices, to appeal to this court. Section 2 of the above-cited act provides as follows:

"Any sheriff dissatisfied with the action of the salary board in fixing the number and salaries of deputies shall have the right to appeal from the decision of the board to the court of common pleas, and shall have the merits of his appeal fully heard and considered. The decision of the court fixing the number and salaries of such deputies shall be final."

Thus no authority is given to name a "matron" as such. The necessity for the presence of a woman attendant upon female prisoners is apparent as well as required by the welfare statutes. The salary board may, therefore, constitute a woman deputy and assign her the sole duty of caring for women prisoners. It, and only it, in the first instance, can fix her compensation. A sheriff being aggrieved at the salary board's action in such respect can only appeal to this court. He cannot arbitrarily fix such compensation.

As to the right of the sheriff to retain moneys received by him, it is clearly stated in the Act of June 1, 1933, P. L. 1141, sec. 2:

"In all the counties wherein the sheriff is or shall be compensated by a salary, all fees and commissions which he shall be required or entitled to charge or receive for official acts or services shall belong to the county, except such taxes, fines and fees as are levied or collected for the Commonwealth or for the Federal Government, and he shall not retain for his own use any such fees or commissions, but shall be entitled to all mileage and other allowances for costs and expenses chargeable by him, including the compensation of special deputies.

"However, no county whose sheriff is salaried shall be required to pay him any fee or commission for services rendered to it by him, or his regular deputies or clerks,

to which the county would be entitled if same shall be credited on his fee account as if same had been paid to him and accounted for by him; and such a sheriff shall be entitled to deduct from any fees or commissions collected by him and due the county any overdue items for his salary or the compensation of his deputies, clerks, or other agents, or for mileage or other allowances aforesaid, or for any other charges against the county except fees or commissions earned by him or them to which the county is entitled as aforesaid, provided he shall furnish the county treasurer of the county with itemized statements of such deductions, which shall be subject to audit, exception and correction in like manner as his fee accounts and claims against the county as now or hereafter provided by law. For such purpose, he shall file duplicates of such statements with the controller or county auditors of the county with the monthly transcripts of his fee account, which shall be subject to the inspection of the county commissioners or any taxpayer of the county."

There is nothing in the record to indicate whether the salary board constituted the office of woman deputy, or matron, or, if so, what salary was fixed for the office, or whether or not the county commissioners tendered such persons designated by the sheriff to fill the office the salary if and as fixed, on the times prescribed by law therefor. We cannot, therefore, go further than to say generally that, under the provisions of the statute cited above, the sheriff has no authority to deduct any sums for salary due himself or others except such as is overdue. Whether, in this case, the amounts deducted were overdue is determinable only by facts which are not before us. Nor does the record disclose whether or not the sheriff filed with the county treasurer a statement of such deductions claimed as overdue items, and a duplicate thereof with the county auditors. This latter provision is mandatory upon him, and unless he did file it his deductions were improper, regardless of any other question concerning them.

The next question is whether or not the sheriff may appoint a solicitor for himself and assign a retainer to the position, to be paid by the county. The petition before us avers that he has attempted to do so and has fixed $600 per year as the sum to be paid.

The Act of March 17, 1933, P. L. 14, bestows no specific authority upon the sheriff to name a solicitor. A review of the legislation concerning counties in lower classes shows a specific bestowal of the right to appoint a solicitor in counties of the third, fourth and fifth classes. Such authority appears in section 2 of the Act of May 8, 1929, P. L. 1666. This was repealed by section 26 of the Act of June 9, 1931, P. L. 401, but was, in effect, reënacted by section 1 of the same act. There is no specific statutory authorization for such appointment in counties of the sixth, seventh, and eighth classes. It must follow, therefore, by negative implication, that the legislature, having deemed it necessary specifically to grant such powers to sheriffs in the lower class counties, intended, by its failure so specifically to provide, that sheriffs in the higher class counties should not have such right of appointment.

It is interesting to note that the legislation concerning this matter in the lower class counties provides that the salary of such solicitor shall be fixed by the salary board and not by the sheriff, and that in no case can the maximum amount allowed exceed $500.

We are of opinion that sheriffs in seventh class counties do not have the right to appoint a solicitor or to fix his salary, but that they should be entitled to necessary legal counsel and guidance, especially in the earlier days of their incumbency when the duties of the office are new to them. This should be returned upon bills duly verified and be classified as an item of expense. The necessity of and the extent of such should be, of course, subject to the county commissioners' approval as the facts may appear.

As to the duty of the sheriff to account for and pay over moneys coming into his hands, we find no ambiguity

in section 3 of the Act of March 17, 1933, supra, which provides:

"It shall be his [the sheriff's] duty to exact, collect and receive all such fees, to and for the use of the county, except such taxes and fees as are levied for the Commonwealth, which shall be to and for the use of the Commonwealth. He shall keep necessary books and make necessary entries of receipts and disbursements of all moneys earned and chargeable upon the county, specifying the day and date, title of case, for what service and from whom received or due, and shall on the first Monday of each and every month pay to the treasurer of the county all fees so received during the preceding month, filing therewith a transcript, in detail, of his fee account book for said month, which shall be verified by him, under oath or affirmation, to contain a true and correct list of all fees received or earned, and outstanding or chargeable upon the county for services rendered in his office during said month, that said fees were severally charged at regular rates, and that he has not received and is not to receive from any person or persons, firm or corporation whatsoever, for any official service or duty, any other fees than those so entered on said transcript."

The county commissioners should provide the sheriff with proper books and forms of transcripts thereof in which to make the mandatory entries and upon which to render a proper transcript to the county treasurer. These books and forms should be arranged by someone skilled in office efficiency so as to minimize the labor of the sheriff as much as is possible.

As we have already pointed out, the Act of June 1, 1933, supra, in section 2, requires the furnishing of an additional transcript to the county auditors. We are of opinion that there is ample authority to infer that the mandate of the statute requiring the filing of the transcript requires a monthly audit thereof. Auditors are existent in lieu of a controller, whose duty it would be to pass upon bills currently and to authorize or refuse

to authorize their payment. There would be no sense or reason in holding that the accounts of the sheriff must accumulate until the end of the year and be passed upon by the auditors at one and the same time. That could but cause confusion and uncertainty.

Before concluding, we wish gratuitously to offer two suggestions which we feel will operate to a more efficient and harmonious conduct of the jail as well as provide economy in the management thereof.

First, we are of opinion that the selection of the personnel of servants at the jail could be left to the sound discretion of the sheriff as warden. It is reasonable to expect greater coöperation and more harmony of operation when this is done. As warden of the jail he is entitled to have about him those in whom he has confidence and who will obey his directions in the every-day management thereof. The number of such servants, their wages, and the payment of their wages, should remain at all times in the judgment of the county commissioners, together with the right to employ and discharge upon the exercise of a gross abuse of discretion upon the part of the sheriff.

Secondly, we are of opinion that the only proper legal and economical manner for the purchase of food and supplies for maintenance of prisoners is for the county commissioners to prepare a budget of the anticipated staple needs for a definite period and to request public bids for these needs, providing, if necessary, for future deliveries and payments, as well as entering into a contract with the lowest and best responsible bidder. As food and supplies are needed or anticipated, the sheriff, as warden of the jail, should requisition them in writing through the commissioners' office. This would provide an economical and orderly system and enable the commissioners to ascertain at all times the cost of operation of the jail and to stay probable waste. We condemn the practice of buying food and supplies at retail as being expensive and wasteful to the taxpayer and as breeding charges of unfairness and partiality.

And now, July 20, 1936, after careful consideration, we enter a declaratory judgment for plaintiff upon the following conclusions, to wit:

1. The number and salaries of deputies and employes is determined by the salary board for Centre County as provided in section 2 of the Act of March 17, 1933, supra, and the employment by defendant of deputies and employes without first receiving the approval of the salary board, or having the same approved by the court on appeal, as well as the amounts of the salaries to be paid to the same, is without authority in law.

2. Defendant is without authority to deduct any items from moneys received and collected by him and due to plaintiff unless such items are overdue and unpaid, and then only upon the filing of statements with the county treasurer and county auditors as provided by law.

3. Defendant shall file intelligent and accurate statements, containing all data required by law, of fees and commissions collected by him and due the County of Centre, with the county treasurer on the first Monday of each month, and pay to the county treasurer the amount so received during the preceding month.

4. The monthly accounts of the sheriff shall be audited by the county auditors.